UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JESUS T.,[1]

      **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 2:20-cv-20577
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Jesus T. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.    PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on July 24 and July 25, 2018, respectively, alleging that he has been disabled since May 3, 2018. R. 88–89, 114–15, 184–96. Plaintiff later amended his alleged disability onset date to January 1, 2017. R. 15, 32–33. The applications were denied initially and upon reconsideration. R. 118–23, 126–31. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 132–33. ALJ Peter Lee held a hearing on February 19, 2020, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 28–63. In a decision dated February 27, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2017, Plaintiff's amended alleged disability onset date, through the date of that decision. R. 15–23. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 2, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 10, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[3] On June 14, 2021, the case was reassigned to the undersigned. ECF No. 8. The matter is ripe for disposition.

II.   LEGAL STANDARD

A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record.  *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is

disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); see *A.B.*, 166 F. Supp.3d at 518.

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between January 1, 2017, his amended alleged disability onset date, and the date of the decision. R. 17–18.

At step two, the ALJ found that Plaintiff's bipolar disorder, borderline personality disorder, ADHD, and substance abuse disorder were severe impairments. R. 18. The ALJ also found that Plaintiff's diagnosed impairment of obesity was not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–19.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to various non-exertional limitations. R. 19–21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a gas station

attendant, dental assistant, and overnight stocker. R. 21.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* jobs as a sealing machine operator, a mail sorter, and a small parts assembler—existed in the national economy and could be performed by Plaintiff. R. 22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 1, 2017, his amended alleged disability onset date, through the date of that decision. R. 22–23.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Moving Brief,* ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22.

IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

The record contains a three-page, check-the-box, and fill-in-the-blank form entitled, "Medical Assessment of Ability to Do Work Related Activities (Mental)[,]" dated January 28, 2020, from the George J. Otlowski Sr. Center for Mental Health Care. R. 391–93, Exhibit 9F ("January 2020 mental assessment").[4] This assessment described Plaintiff's ability to perform work-related activities using the following scale: "Unlimited or very good[,]" meaning the ability to function in this area is more than satisfactory; "Good[,]" meaning the ability to function in this area is limited but satisfactory; "Fair[,]" meaning the ability to function in this area is seriously

---

[4] The author's signature is illegible. R. 393.

limited, but not precluded; and "Poor or None[,]" which means that there is no useful ability to function in this area. R. 391. In the area of making occupational adjustments, it was opined that Plaintiff had a "good" ability to function independently, but a "fair" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisor(s), and maintain attention/concentration, and only a "poor/no" ability to deal with work stress. R. 391–92. The author made no response to the request to "[d]escribe any limitations and include the medical/clinical findings that support this case assessment." R. 392. In the area of making performance adjustments, it was opined that Plaintiff had a "fair" ability to understand, remember, and carry out complex job instructions; understand, remember, and carry out detailed, but not complex, job instructions; and to understand, remember, and carry out simple job instructions. *Id*. The author made no response to the request to "[d]escribe any limitations and include the medical/clinical findings that support this assessment; e.g., intellectual ability, thought, organization, memory, and comprehension, etc." *Id*. In the area of making personal social adjustments, it was opined that Plaintiff had a "good" ability to maintain personal appearance, and a "fair" ability to demonstrate reliability, but a "poor/no" ability to behave in an emotionally stable manner and to relate predictably in social situations. *Id*. Again, the author made no response to the request to "[d]escribe any limitations and include the medical/clinical findings that support this assessment." R. 393. It was further opined that Plaintiff could manage benefits in his own best interest. *Id*.

## V.     DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because, *inter alia*, the ALJ failed to properly consider the January 2020 mental assessment and failed to properly consider Plaintiff's treatment and hospitalization records. *Plaintiff's Moving*

*Brief*, ECF No. 19, p. 26. This Court agrees.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: Occasional contact with supervisors, co-workers and the public; able to do only simple and routine tasks." R. 19. In reaching this determination, the ALJ found the January 2020 mental assessment "not persuasive":

> I have fully considered the medical opinions and prior administrative medical findings as follows: The Medical Source Statement from the George J. Otlowski Sr. Center for Mental Health Care indicates that the claimant has a "fair" ability regarding most mental work activities (9F). I do not [sic] find this opinion not

>persuasive.[5] *Although portions of the opinion are supported by the evidence, it is not clear who is giving this opinion.* Moreover, activities such as "behave in an emotionally stable manner" are vague and not quantified, as is often done in a functional analysis.

R. 21 (emphasis added).

Plaintiff challenges this evaluation, arguing the ALJ "largely ignored" the January 2020 mental assessment, which Plaintiff represents was authored by his treating psychiatrist, Padmaja Annamaneni. *Plaintiff's Moving Brief*, ECF No. 19, p. 26. The Acting Commissioner argues generally that the ALJ "fully considered Plaintiff's mental impairments[,]" as evidenced by the ALJ's discussion of the medical evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22, pp. 9–13. The Acting Commissioner does not specifically address Plaintiff's argument regarding the January 2020 mental assessment. *See id*.

The Court agrees with Plaintiff that the ALJ did not properly consider the January 2020 mental assessment, but for reasons different from those raised by Plaintiff. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. His decision must include "a clear and satisfactory

---

[5] The ALJ's double negative appears to be a typographical error. *Id*.

explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[6] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner "will consider" the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our

---

[6] As previously noted, Plaintiff's claims were filed on July 24 and 25, 2018.

12

disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec.*, No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

In the case presently before the Court, the ALJ acknowledged the January 2020 mental assessment, but found it unpersuasive because "it is not clear who is giving this opinion." R. 21.[7] Although Plaintiff represents that his treating psychiatrist, Dr. Annamaneni, provided this opinion, the signature is illegible and nothing on the January 2020 mental assessment indicates who authored this opinion. *See* R. 391–93. The Court is therefore at a loss to understand how the ALJ could assess the persuasiveness this opinion—which is material to Plaintiff's claims as discussed further below—and ultimately determine that the opinion was not persuasive when the ALJ could not determine the opinion's author. Although the current regulations require an ALJ to articulate how he or she considered the supportability and consistency of a medical opinion, an ALJ should also *consider* the remaining factors, but not necessarily explain his consideration, including, *inter alia*, the relationship with the claimant and the specialization of the medical source. *See* 20 C.F.R. §§ 404.1520c(b)(2) (providing that the ALJ "will explain how we considered the supportability and consistency factors" and that the ALJ "may" but is "not required to" explain how the remaining factors were considered), (c)(3)–(4) (providing that the ALJ "*will* consider" the various factors, including, *inter alia*, the relationship with the claimant and the medical source's specialty), 416.920c(b)(2) (same), (c)(3)–(4) (same); *Beerhalter v. Comm'r of Soc. Sec.*, No. CV 19-17561, 2020 WL 5627015, at *7 (D.N.J. Aug. 18, 2020) (noting that the ALJ "must still consider factors such as 'length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, and specialization'" and remanding action where "there is

---

[7] The ALJ also found at least one portion of the opinion—that Plaintiff had a poor/no ability to "behave in an emotionally stable manner—unpersuasive for the additional reason that it was "vague and not quantified," but the ALJ conceded that other "portions of the opinion are supported by the evidence[.]" R. 21.

14

no indication that [the ALJ] considered these factors in relation to Dr. Slaughter's opinion. He notably failed to consider factors such as 'length of the treatment relationship,' 'frequency of examinations,' and 'examining relationships'") (citing 20 C.F.R. § 404.1520c(a)–(c)). Notably, several courts in other jurisdictions have found that an illegible signature by an unknown author creates a gap in the record, which the ALJ has the duty to resolve. *See Bogner v. Comm'r of Soc. Sec.*, No. 20CIV10724NSRJCM, 2022 WL 16701197, at *12–13 (S.D.N.Y. July 18, 2022), *report and recommendation adopted*, No. 20CIV10724NSRJCM, 2022 WL 4752464 (S.D.N.Y. Sept. 30, 2022) ("It is particularly improper for the ALJ to find an opinion unpersuasive because the opinion is undated and the author is unknown, as the ALJ did here . . . without the ALJ taking steps to determine its author."); *Segarra v. Comm'r of Soc. Sec.*, No. 20-CV-5801, 2022 WL 1051155, at *15-16 (S.D.N.Y. Feb. 17, 2022), *report and recommendation adopted*, 2022 WL 669877 (S.D.N.Y. Mar. 7, 2022) ("[T]he ALJ had inadequate information from which to assess Plaintiff's impairments" where the "medical questionnaire that was included in the Record was incomplete and its author was unknown"); *Keena v. Kijakazi*, No. 3:20-CV-172, 2021 WL 11636832, at *4–6 (D.N.D. Nov. 18, 2021) (stating that "[a]n illegible signature creates a gap in the record because an ALJ should 'discern whose opinion she analyzed'" and "[w]hile the ALJ is required to articulate consideration of only two factors—the supportability and consistency of the medical opinion—he or she is required to consider all five factors. . . . Here, because the signer's identity was not determined, it was impossible for the ALJ to consider the source-specific factors of § 404.1502c(c)(3)–(c)(5)") (citations omitted); *Ransom v. Comm'r of Soc. Sec.*, No. 1:19-CV-00096, 2020 WL 2833003, at *3 (W.D.N.Y. June 1, 2020) ("The incomplete medical source statement created a clear gap in the record that the ALJ should have filled. As such, the ALJ failed to develop the record by not attempting to obtain the missing page and to discern the

15

statement's author."); *Gauda v. Comm'r of Soc. Sec.*, No. 1:19-CV-00076, 2020 WL 2507334, at *4 (W.D.N.Y. May 15, 2020) ("The illegible signature on the [ ] opinion [ ] created a clear gap in the record that the ALJ should have filled.").

This Court cannot conclude that the ALJ's error in this regard is harmless. As previously noted, the ALJ expressly credited portions of the January 2020 mental assessment as "supported by the evidence[.]" R. 21. The January 2020 mental assessment was critical to Plaintiff's claims, particularly where this opinion arguably found greater limitations than those contained in the RFC crafted by the ALJ. For example, it was opined that Plaintiff had a "poor/no" ability to deal with work stress. R. 391. While the ALJ's RFC limits Plaintiff to "only simple and routine tasks[,]" R. 19, it is not clear to the Court whether this limitation adequately accommodates a poor to no ability to deal with work stress. In addition, it was also opined that Plaintiff had only a "fair" (*i.e.*, a seriously limited ability, but not precluded) ability to relate to co-workers, deal with the public, and interact with supervisors, and a "poor/no" ability to relate predictably in social situations. R. 391–92; *see also* R. 49–50 (Plaintiff's testimony regarding his difficulty getting along with managers or co-workers), 248 (reflecting Plaintiff's statement that he has trouble getting along with co-workers and family members and has no interest in social activities), 251 (reflecting Plaintiff's statement that he has trouble getting along with authority figures, that he has been fired or laid off from a job because of problems getting along with other people, and that he has gotten into fights with co-workers), 314 (reflecting Plaintiff's statement that he got in an altercation with his boss and walked off his job). The RFC, however, provides that Plaintiff could have "[o]ccasional contact[,]" *i.e.*, up to one-third of the time, with supervisors, co-workers, and the public. R. 19; *see also* SSR 83-10 (defining "occasionally"). Based on this

record, the Court simply cannot conclude that substantial evidence supports the ALJ's conclusion that this opinion was "not persuasive" or that this error was harmless.

In further challenging the RFC, Plaintiff also contends that the ALJ "largely ignored" Plaintiff's actual treatment and psychiatric hospitalization records. *Plaintiff's Moving Brief*, ECF No. 19, p. 26. The Court agrees that the ALJ's consideration of this evidence is flawed. For example, the ALJ failed to consider that Plaintiff had a second hospitalization from May 26, 2017, through May 30, 2017, for a suicide attempt by overdosing on medication following a dispute with his wife, R. 352, 354, and instead characterized this event as merely "a second hospitalization in which he was involved in a domestic altercation." R. 20. The ALJ's failure to fully consider Plaintiff's medical history further undermines his RFC determination. *See Harrison v. Berryhill*, No. CV 18-1540, 2019 WL 936658, at *5–6 (D.N.J. Feb. 26, 2019) ("Based on this Court's finding that the ALJ overlooked elements of Plaintiff's extensive history of depression, including the 2013 hospitalization due to suicidal ideation, the Court agrees with Plaintiff that the ALJ's RFC determination overlooked material aspects of Plaintiff's medical history and, therefore, was not based upon substantial evidence.").

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[8] Moreover, remand is appropriate even if, upon further examination of the January 2020 mental assessment, Plaintiff's treatment and hospitalizations records, and the

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of the January 2020 mental assessment, Plaintiff's treatment and hospitalization records, and the RFC determination, the Court does not consider those claims. However, the Court notes that it would be helpful if the ALJ also considered this evidence at step three of the sequential evaluation analysis, which the ALJ failed to do. *Cf. Green v. Colvin*, 996 F. Supp. 2d 286, 292–93 (M.D. Pa. 2014) (remanding action where, *inter alia*, the ALJ did not discuss at step three the claimant's anger issues, problems with family and social relations, and records and testimony that the claimant had thoughts of suicide, homicide, and otherwise hurting others).

RFC determination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 28, 2023                                *s/Norah McCann King*
                                                                 NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE

18